THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH SINGLETON, Defendant-Appellant.

Fifth District   No. 5—89—0441

Opinion filed August 23, 1991.

Daniel M. Kirwan and John T. Hildebrand, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Charles Grace, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Scott A. Manuel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LEWIS delivered the opinion of the court:

The defendant, Joseph Singleton, appeals his convictions for one count of aggravated criminal sexual assault, four counts of criminal sexual assault (one count of which was vacated by the court as it was based upon the same physical act as the aggravated criminal sexual assault conviction and, thus, was a lesser-included offense), and two counts of aggravated criminal sexual abuse committed against his daughter. On appeal, the defendant contends (1) that the State failed to prove him guilty of aggravated criminal sexual assault beyond a reasonable doubt, (2) that he was denied effective assistance of counsel, (3) that the court abused its discretion in not granting his motions for mistrial, and (4) that all but one of the defendant's convictions must be vacated as all of the convictions could have been based on the same physical act.

The defendant was charged with four counts of aggravated criminal sexual assault, four counts of criminal sexual assault, four counts of aggravated criminal sexual abuse, and four counts of battery. The charges concerning the defendant's sexual molestation of his daughter were based on the defendant's activities from 1986 until February 1988. The defendant was brought to trial before a jury on April 17, 1989. On the first day of trial, the defendant filed a motion *in limine* to exclude his prior conviction for reckless homicide and a motion for severance of the battery offenses. The court denied the defendant's motion *in limine* but granted the motion for severance.

On April 18, 1989, shortly after the commencement of the testimony of the State's first witness, the defendant made a second motion *in limine* in which the defendant sought to have excluded evidence of (1) prior bad acts or specific acts of domestic violence by the defendant against other persons not named as a victim in the information, (2) specific bad acts or physical abuse against the complainant which were not related directly to the charges in the information, (3) sexual abuse of the defendant's other daughter, (4) specific acts of sexual contact with the complainant which occurred prior to 1985, (5) threats made by the defendant to the complainant or third parties which were not related to the charges in the information, (6) attempted suicides by members of the defendant's family other than the victim named in the information, (7) statements made by the defendant regarding his former wife's whereabouts, and (8) the defendant's racial intolerance or bigotry. The court granted the defendant's motion *in limine* with regard to his request to exclude evidence of attempted suicides of members of the defendant's family and with regard to evidence of the defendant's racial intolerance and bigotry but denied the remainder of the motion.

At trial, the State presented the testimony of four witnesses: the complainant's stepmother; the complainant's brother; the complainant's sister; and the complainant. The complainant's stepmother testified that she had lived with the defendant and his three children since 1980, and in 1983, she married him. She and the defendant had one child, Matthew. The complainant's stepmother began to testify about an incident which occurred between her and the defendant in September of 1988. The defendant objected to this line of questioning on the grounds that this evidence was of events after the time of the incidents related in the criminal information and was irrelevant and prejudicial. The court sustained the defendant's objection. Also at this time, the defendant moved for a mistrial based upon the State's prejudicial opening statement, which was denied by the court.

The complainant's stepmother further testified regarding an incident in 1980 in the family van, in which the defendant accused her of infidelity, struck her in the face and head, and attempted to push her head into the van's running motor in front of the defendant's three children. The defendant also threw water from plastic water jugs onto the children and threw the empty water jugs at the children. Following this testimony, the court, at the defendant's request, instructed the jury that this testimony was being admitted for a limited purpose, as "[o]ne of the elements [of the charges against the defendant] is that the defendant is alleged to have committed an act of sexual penetration with [the complainant] and acted in such a manner as to threaten or endanger the life of [the complainant]," and that this testimony was being admitted for the limited purpose of whether "it bolsters or does not bolster proof of that element of those offenses."

The next incident to which the complainant's stepmother testified was in 1982, wherein she had been shopping and had left her wallet at the store. In her wallet was the defendant's paycheck. After shopping, the complainant's stepmother went to her sister-in-law's house, and the defendant's children met her there after school. The defendant picked her and the children up at Mona's house, and when he found out she had lost her wallet, the defendant struck her repeatedly on the drive home. As a result of this incident, she received a "fat lip, a black eye," and a "bloody nose." Following this testimony, the court again instructed the jury that this evidence was being admitted for the same limited purpose as the previous incident.

The complainant's stepmother related an incident which occurred in the summer of 1984, when the defendant sent her and the children, with the exception of the complainant, out of the house to weed the garden. The defendant kept the complainant inside with him, as the defendant wanted to show the complainant "how to mop the floors the right way." While the complainant was in the house alone with the defendant, the complainant's stepmother attempted to go into the house to get a drink, but the defendant refused to let her into the house and told her to get a drink of water from the hose. The complainant came out of the house 20 minutes or a half hour later. The court, at the defendant's request, instructed the jury that this testimony was being admitted for the limited purpose of showing the defendant's pattern of conduct.

In 1985, on the night before the defendant was to start his prison term for his reckless homicide conviction, the complainant's stepmother testified that the defendant sent her and the children to the

store to buy the defendant a steak for his dinner. Again, the defendant kept the complainant home alone with him.

According to the complainant's stepmother, the defendant was in prison from March 1985 until June or July 1986. Before the defendant went to prison, the complainant had told her that the defendant was sexually molesting her. When the defendant returned home after being released from the penitentiary, she made a concerted effort not to leave the complainant alone with the defendant. She succeeded in these efforts for approximately two months after his return home from prison, but then the defendant sent her on an errand and had her leave the complainant alone with him so that the complainant would become accustomed to being alone with him without being afraid of him. Approximately two weeks later, the defendant again requested that the witness leave the complainant alone with him while she went on an errand. Thereafter, whenever the defendant wanted to be alone with the complainant, he would send the complainant's stepmother on an errand and have her take the other family members with her. This pattern occurred about twice a month for the remainder of 1986, during 1987, and in 1988.

On cross-examination, the complainant's stepmother admitted that the defendant had strict rules of discipline for the children with regard to their school work, their chores, and dating for the girls. She stated that the defendant is a perfectionist in some ways and the children never performed their chores right as far as the defendant was concerned. She also admitted that she and the children went to visit the defendant every weekend while he was in prison. The witness stated she was never hospitalized from the defendant's beatings, but she once went to the doctor for a broken finger inflicted by the defendant.

The complainant's brother was the next witness to testify for the State. Prior to his testimony, the court instructed the jury that his testimony was being admitted for the limited purpose of "going to prove or disprove the element [of the offenses] that we discussed earlier and his testimony will be confined or should be confined to incidents that have previously been testified to by [the complainant's stepmother] in which he was either a participant or an observer. Any testimony beyond those incidents should be ignored by you."

The complainant's brother testified that the defendant is his father. In the summer of 1980, he and his other sister were playing, and they went into the house to ask the defendant if they could go to the playground. He went to the bedroom and opened the door, where he observed the defendant on top of the complainant. The defendant got

up and and came to the door wrapped in a sheet, while the complainant lay on the bed naked. The complainant's brother told the defendant that they wanted to go to the playground, and the defendant told them to go ahead. After the complainant's brother and sister left the trailer, the door of the trailer was locked. The complainant's brother corroborated his stepmother's testimony regarding the incident in the van in 1980 and regarding the evening before the defendant went to prison in 1985. He too testified that the defendant modified his behavior when the defendant first returned from prison, but after the defendant resumed drinking, the defendant started his violent behavior. He stated that the defendant sent him to the store about every two weeks.

On cross-examination, the complainant's brother admitted that he was not happy with the defendant when he moved out of the defendant's house. He explained that the defendant did not think he did enough homework or enough chores. The witness did not believe the defendant was too strict with regard to homework and chores, but he was angry with the defendant because of the defendant's abuse, *i.e.*, the defendant's name calling and hitting the family.

The complainant's sister testified that she is currently 19 years of age, that her brother is 20 years of age, and the complainant is 17 years of age. She stated that in 1980, she was sharing a bed with the complainant, and at about midnight on this particular night, the defendant came into the bedroom naked. The complainant's sister pretended to be asleep. The defendant took the complainant from the bed and into the living room. The complainant's sister followed the defendant and the complainant to the living room where she observed the defendant's shadow and the complainant's shadow on the wall. The complainant's legs were raised in a "V" and the defendant was raising up and down above her. She heard the complainant crying and asking the defendant to stop and to leave her alone. The complainant's sister also corroborated the previous witnesses' testimony about the van incident in 1980; about the incident when she and her brother came into the house to the bedroom where the complainant was on the bed with the defendant; and about the events of the night before the defendant left for prison in 1985.

In addition, the complainant's sister testified that on one evening in 1984, the defendant sent her stepmother to the store, but he kept her and the complainant at home with him. After her stepmother left, the defendant sent the witness out to walk the dog, even though it was nighttime and dark outside. The complainant's sister hurriedly walked the dog, and when she returned, the defendant told her she

had not walked the dog long enough and sent her back out to walk the dog longer.

The complainant's sister likewise explained how, after the defendant returned from prison, the defendant started drinking and started to spend time alone with the complainant again. She stated that complainant's staying home alone with the defendant became a regular event which occurred about twice a week or twice a month.

The complainant's sister testified to two incidents wherein the defendant struck her or the complainant. The witness further testified it was after an incident where the defendant slapped her and the complainant that she and the complainant moved out of the defendant's home. According to the complainant's sister, the defendant would get upset when they did not meet his standards when they did their chores, and this happened often. The defendant slapped her about every week.

The complainant testified that she had been married since December 1988, and that her husband is the father of her child. She is currently 17 years of age. She stated that she had lived with the defendant and her brother and sister since she was two years of age, but before that she lived with her mother in Joliet, Illinois. The complainant testified that in 1979, when she was in second grade, she and her sister had come home from school and were watching cartoons. They had not done their chores, and when the defendant came home, he became angry and slapped them and threw her sister down the hall.

The complainant testified to three incidents in 1980. The first incident was about the defendant's actions in the van which had been testified to by the others. The second incident occurred when the defendant accused her stepmother of infidelity. At that time, the defendant made the complainant and her brother and sister lay on the floor for a "good hour" with their noses to the floor, while the defendant struck her stepmother. The third incident related by the complainant was that, on one night, the defendant told her to come back into the living room to him after her sister went to sleep so he could sexually molest her. However, the complainant did not do as the defendant told her, but instead, she hid in a broom closet, and the defendant did not find her.

The complainant testified that in 1981 or 1982, her stepmother ran out of flour. The defendant was going to the store, and he told the complainant to tell her stepmother she wanted to go with him. The complainant went with the defendant in the car, whereupon he pulled the car over and told her to get in the back seat and take her clothes off. She was 9 or 10 years old at the time. The defendant got

in the back seat with her and had sexual intercourse with her. She testified that she cried and covered her eyes because she could not understand why the defendant was doing this. She stated that the defendant told her, "All dads do this to their little girls."

On one occasion in 1983, the complainant recalled she was sitting at the table doing her homework, and the defendant was on the couch. Suddenly, the defendant touched her shoulder, she looked up at him, and the defendant struck her and "sliced" her eye. She went to the hospital and received stitches for this injury.

The complainant told of an incident in 1984 when the defendant and her sister fought after the defendant had picked her sister up from a track meet she had participated in. As a result of the fight, which the complainant witnessed, her sister received a black eye and a "busted lip." Her sister had to miss school for about a week following the incident.

The complainant also testified to the incident in 1984 when the defendant sent her stepmother to the store with the family, but she and her sister remained at home. After the others left, the defendant had her sister walk the dog, and because she returned quickly as the complainant had asked her to, the defendant sent her sister back out to walk the dog longer. When her sister had returned the first time from walking the dog, the complainant was in the bedroom on the bed undressed.

The complainant also told of the incident in 1984, when the rest of the family was weeding the garden. She testified that the defendant called her into the house, on the pretext that she had a telephone call. The defendant had intercourse with her on that occasion also.

The complainant testified to the events of the evening before the defendant went to prison. She, too, told how the defendant had sent the others to the store for a steak and had kept her at home with him. After the others left, the defendant told her to go into the bedroom or he would hurt her. The complainant complied, and the defendant had sexual intercourse with her.

When the defendant returned home after prison in 1986, the defendant did not molest her for a while, and when her stepmother went out, the complainant would go with her. The defendant had told her while he was in prison that he would not sexually molest her when he got out. About a month after the defendant had been home from prison, she stayed at home alone with the defendant to see if he had told the truth that he would not touch her again. The defendant did not molest her on that occasion; however, the next time he had her stay home alone with him, the defendant asked her if she wanted

to have sexual intercourse "for old times sake." She said she did not, but the defendant told her she had "better get into the bedroom," so she complied. The defendant again had sexual intercourse with her, and he touched her vagina with his fingers. After this occasion, the defendant had sexual intercourse with her about twice a month.

The complainant stated that the defendant had intercourse with her twice in January 1987, and also in March, April, May, June, July, and September 1987. Every "once in awhile," the defendant would touch her vagina, and he would also fondle her breasts.

During the time period of January 8, 1988, and January 14, 1988, the defendant again forced her to have sexual intercourse with him. The last time the complainant had intercourse with the defendant was in February 1988. On the last occasion, the complainant refused and the defendant told her he would kill her if she did not comply. The complainant went into the bedroom, where she hesitated, as she did not want to do as the defendant asked. When the defendant came into the bedroom, he pushed her down onto the bed, and because she was afraid of the defendant, she again had intercourse with him.

The complainant explained that the defendant would tell her after intercourse that he would kill her if she told anyone of his activities. He also told her that no one would believe her if she told, and after he was out of prison, he would come looking for "us no matter what." She finally told about the defendant's activities in November 1988. At that time, she had moved out of the defendant's home after an incident where the defendant had pulled her hair, slammed her head against the wall, and kicked her in the stomach. She was pregnant at that time.

On cross-examination, the complainant admitted that the defendant had refused to consent to her marriage to her husband, and that he was angry with her because she was pregnant. She also admitted that the defendant had told her he was going to charge her husband with statutory rape, since she was 16 years old when she became pregnant. The complainant explained that the defendant became angry when her mother-in-law obtained the defendant's divorce papers and started to make plans for her wedding.

At the close of the State's evidence, the defendant again moved for a mistrial on the grounds that the evidence of other bad acts admitted over his objections was irrelevant and highly prejudicial to the defendant. The defendant also moved for a directed verdict. The court expressed grave concern over the evidence admitted at trial, but denied the defendant's motion for mistrial. However, the court directed verdicts on two of the counts for aggravated criminal sexual abuse

and on three counts of aggravated criminal sexual assault. At this time, the court instructed the jury to disregard the entire testimony of the complainant's stepmother, brother, and sister.

The defendant took the stand on his own behalf. He testified that before he was charged with the offenses herein, he had a business called Singleton Decorating. He stated he had had the custody of the complainant since she was very young. The defendant further stated that he was a strict father, and that there were times when the complainant did not do what she was told. He disciplined the complainant by scolding and yelling at her, by spanking her when she was young, and by grounding her when she was older. The defendant testified that he believed that it was essential that the children's homework was done and that the complainant oftentimes wanted to do other things than study. The defendant had assigned each of his children chores. Additionally, the defendant did not let the complainant date until she was 16 years of age, and he had a rule that he must meet the boy she was dating. The defendant explained that he and the complainant had conflicts over this.

The defendant admitted that he had slapped the complainant on her face when she was disrespectful to him or when she deliberately disobeyed him, but that he never hit her with his fist. The defendant denied he had ever touched the complainant in a sexual manner or that he had had sexual intercourse with her.

The defendant admitted that he went to prison following his conviction for reckless homicide. He stated that he had a conversation with complainant while he was in prison, and that he told her that "things" would be better when he got out, but he denied that they discussed his sexual molestation of her. The defendant further admitted that he did not like it that the complainant became pregnant and that she wanted to get married at 16 years of age. He testified he had agreed initially to let the complainant marry, but he changed his mind when the complainant's mother-in-law obtained copies of his divorce decree and made wedding plans for the complainant. He was offended by the complainant's mother-in-law's actions. He also admitted he told the complainant that he was going to have her husband arrested for statutory rape because he was angry that he had gotten the complainant pregnant. The defendant told the complainant that he would not consent to her marriage, and that she could not see her husband any more. This upset the complainant.

The defendant recalled the incident wherein the complainant received stitches for a cut over her eye. However, he stated she cut her eye when she "supposedly fell out of a chair."

After the defendant's testimony, defense counsel renewed his motions for a directed verdict and for a mistrial. The court again denied both of the defendant's motions. Following the jury's deliberations, the jury found the defendant guilty of one count of aggravated criminal sexual assault, four counts of criminal sexual assault, and two counts of aggravated criminal sexual abuse. The court entered judgment on the jury's verdicts. Subsequently, the defendant filed a motion for a new trial, which was denied. At the defendant's sentencing hearing, the court determined that the defendant was eligible for consecutive sentences and imposed the following sentences of imprisonment: for the aggravated criminal sexual assault conviction, 20 years; for one criminal sexual assault conviction, 15 years; for the second criminal sexual assault conviction, 10 years; for the third criminal sexual assault conviction, four years; for one aggravated criminal sexual abuse conviction, five years; and for the last aggravated criminal sexual abuse conviction, three years. The court ordered each sentence to run consecutive to the others for a total sentence of 57 years' imprisonment. The court did not impose a sentence on the fourth criminal sexual abuse conviction as it found that this conviction arose out of the same physical act as one of the convictions for aggravated criminal sexual assault.

The first issue raised by the defendant on appeal is that the State failed to prove him guilty of aggravated criminal sexual assault beyond a reasonable doubt. The defendant argues that the evidence failed to show that the defendant's actions, during the commission of the offense, threatened or endangered the victim's life, *i.e.*, that verbal threats that he would kill the victim coupled with the defendant's pushing the victim onto the bed was insufficient to sustain his conviction, as this evidence was proof of a threat of force only. The defendant contends that a threat of force is all that is needed to convict under the criminal sexual assault statute, and therefore, proof of something more is needed to convict under the aggravated criminal sexual assault statute.

The pertinent part of the aggravated criminal sexual assault statute under which the defendant was charged provides as follows:

> "The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed *during the commission of the offense*:
> * * *
> (3) the accused acted in such a manner as to threaten or en-

danger the life of the victim or any other person." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(3).)

From the foregoing language, it is clear that the aggravating factor must occur at the time of the commission of the offense or so close to the time of the occurrence as to be an inseparable part of the offense.

■ In the case *sub judice*, the State's theory was that the defendant's acts of domestic violence against the complainant and other members of the family throughout the years created a real fear in the mind of the complainant that her life was in danger when she refused to participate in sexual intercourse with the defendant and he stated that he would kill her if she did not do as he asked. We do not find that this is sufficient to sustain the defendant's conviction for aggravated criminal sexual assault, and the defendant's points are well taken that it must be overt acts by the defendant, and not verbal threats, which endanger or threaten a victim's life, and that the life-threatening acts must occur during the commission of the offense. Prior violent acts against a victim, remote in time from the sexual molestation charged, are insufficient to support that element of the offense of aggravated criminal sexual assault that the defendant's acts threatened or endangered a victim's life.

In the case *sub judice*, the evidence revealed that the defendant's acts of domestic violence occurred frequently throughout the years, but none of these acts occurred at the time of the defendant's sexual penetration of the complainant. Further, the defendant's overt act of pushing the victim onto the bed cannot be viewed as a life-threatening act on the part of the defendant. There was no evidence presented that the complainant sustained any type of physical injury, not even a bruise, from the defendant's pushing her onto the bed at the time of his sexual violation of her in February 1988, the incident upon which the aggravated criminal sexual assault charge was based. Therefore, we find that the defendant's conviction for aggravated criminal sexual assault cannot stand. However, we do not find that we must reverse the defendant's conviction outright, as the defendant requests, but instead, we find that the evidence presented regarding the defendant's sexual intercourse with the victim in February 1988 was sufficient to sustain a conviction for criminal sexual assault in that the defendant was a family member who committed an act of sexual penetration with a victim under the age of 18. (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(3).) Thus, pursuant to our powers under Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)), we reduce the defendant's conviction from aggravated criminal sexual assault to criminal sexual assault. In addition, we reduce the defendant's sentence from 20 years'

imprisonment to 15 years' imprisonment, to run consecutive to the sentences on the remaining charges, thereby giving the defendant a total sentence of 52 years' incarceration. See 134 Ill. 2d R. 615(b)(4); *People v. Wagner* (1989), 189 Ill. App. 3d 1041, 546 N.E.2d 283.

The defendant's second contention on appeal is that he was denied the effective assistance of counsel. In particular, the defendant asserts that his counsel was ineffective as he failed to object to the complainant's testimony of the defendant's prior bad acts and sexual contacts with the complainant unrelated to the offenses charged; that his attorney failed to obtain limiting instructions regarding the collateral sexual assaults and failed to object to certain of the State's jury instructions; that defense counsel failed to object to the prosecutor's improper closing arguments; and that defense counsel's errors were not harmless where, as here, the evidence was closely balanced.

The standard for determining whether a defendant was deprived of a fair trial due to counsel's ineffectiveness is well established. In *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, the supreme court held that to support a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness such as to deprive the defendant of a fair trial and that there is a reasonable probability that, but for his counsel's errors, the outcome of the defendant's trial would have been different. (*Albanese,* 104 Ill. 2d 504, 473 N.E.2d 1246; *People v. Schelsky* (1985), 134 Ill. App. 3d 1044, 481 N.E.2d 807.) With this standard in mind, we address the defendant's specific concerns enumerated in this issue.

The defendant first argues that his counsel was ineffective because he failed to object to the complainant's testimony of the defendant's prior acts of physical abuse of her and other members of the family and to the defendant's collateral sexual assaults against her which were not related to the charges for which he was prosecuted. The defendant argues that the introduction of this evidence of other bad acts was prejudicial and had no probative value.

■ Initially, we note that the defendant's attorney did attempt to exclude this testimony. On April 18, 1989, the defendant's counsel filed a motion *in limine* in which he asked that evidence of the defendant's physical abuse of the complainant and other family members and other sexual acts against the complainant unrelated to the offenses charged be excluded. In ruling on the defendant's motion, the court determined that the evidence of the defendant's prior physical abuse was admissible to show the complainant's state of mind and as evidence of the element of the offense of aggravated criminal sex-

ual assault of endangering or threatening the complainant's life. Since defense counsel received an adverse ruling on this matter from the court, defense counsel may have deemed it useless to object further to this evidence during the trial.

Similarly, the evidence of the defendant's physical abuse of the complainant and other members of the family was admissible. Generally, evidence of other crimes is inadmissible if it is introduced merely to establish a defendant's propensity to commit crime. (*People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612.) However, such evidence is admissible if it is relevant for any other purpose, such as *modus operandi*, intent, identification, motive, or absence of mistake. (*Richardson*, 123 Ill. 2d 322, 528 N.E.2d 612.) The evidence of the other crimes need not be identical to the crimes charged to be admissible. (*Richardson*, 123 Ill. 2d 322, 528 N.E.2d 612.) In the instant case, the evidence of the defendant's physical abuse of the complainant and other members of the family established the defendant's intent, motive, and method of operation, *i.e.*, he used fear to manipulate and achieve his own desires, the sexual violation of his daughter, and it was a result of this fear that she and the other members of the family remained subject to the defendant's actions. It also explains why the complainant waited so long to reveal the defendant's activities. Because this evidence was admissible, the defendant's counsel was not remiss in not objecting to this evidence. Additionally, the defendant's counsel attempted to exclude this evidence also in his motion *in limine* and raised the denial of his motion *in limine* in his post-trial motion. Therefore, we cannot say that defense counsel's representation on this point was below a standard of reasonableness.

In addition, evidence of other sexual acts with the complainant is admissible to show the relationship and familiarity of the parties and to corroborate the complainant's testimony concerning the offenses charged. (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376.) Since this evidence was admissible, defense counsel was not required to do the useless act of objecting to this evidence, and his conduct cannot be faulted for this failure.

■ We note that under the defendant's argument of the first sub-issue of ineffectiveness of counsel, the defendant expresses various concerns about the charges in the criminal information. We fail to see the utility of this argument as the State simply charged the defendant with the lesser-included offenses of criminal sexual assault for the same acts for which it charged the defendant with aggravated criminal sexual assault. The other charges of aggravated criminal sexual abuse were also proper as these charges were not lesser-included of-

fenses and proof of separate and distinct acts from the criminal sexual assault charges were required.

■ The defendant intertwines his other "bad acts" argument with the contention that his counsel was ineffective because he failed to obtain limiting instructions regarding these other bad acts, and because he failed to object to the State's instructions. The defendant posits that failure to offer a limiting instruction of the other bad acts allowed this evidence to be used substantively regarding his guilt, and since the State's instructions failed to assign dates to the offenses, counsel's failure to object allowed the jury to find him guilty of all of the charges based upon one sexual incident. The specific instructions to which the defendant takes exception are: (1) the State's instruction which recited the counts of the information and the dates of the offenses for each count and the concluding sentence in the instruction which stated, "If you find the offenses charged were committed, the State is not required to prove that any of them was committed on that particular date charged"; and (2) the State's issue instruction for aggravated criminal sexual assault, as it failed to state that the aggravating factor must occur during the commission of the offense and because this instruction failed to give a time period as to when the offense was committed. The defendant claims these deficiencies allowed the jury to convict the defendant based upon any one of the sexual acts testified to, collateral or otherwise.

As the supreme court has stated, "[t]he purpose of an instruction is to guide the jury in its deliberations and to help it reach a proper verdict through the application of legal principles as applied to the evidence and the law." (*People v. Hester* (1989), 131 Ill. 2d 91, 98, 544 N.E.2d 797, 801.) Jury instructions are not to be viewed in isolation but are to be considered as a whole. (*Hester*, 131 Ill. 2d 91, 544 N.E.2d 797; *People v. Goff* (1985), 137 Ill. App. 3d 108, 484 N.E.2d 414.) A review of all of the instructions given to the jury in the instant case reveals that neither argument of the defendant has merit.

It is important to note that the State's instructions which were given were Illinois Pattern Jury Instructions (IPI), Criminal (2d ed. Supp. 1989), and that, where possible, IPI instructions should be given rather than non-IPI. (*People v. Brooks* (1989), 185 Ill. App. 3d 935, 542 N.E.2d 64.) Notwithstanding that fact, it is also significant that the verdict forms given to the jury explicitly enumerated the time frames of each of the offenses charged, and thus, the jury clearly knew that the offenses for which they were to find the defendant guilty must have been committed during those times. For example,

the verdict form submitted to the jury for one of the criminal sexual assault charges stated as follows:

> "We, the jury, find the defendant Joseph Edward Singleton Guilty of the offense of Count VIII, Criminal Sexual Assault during the months of January, March, April, May, June, July and September, 1987."

The other verdict forms similarly contained the dates given in the criminal information, *i.e.*, "during October, 1986," "during the period between January 8, 1988 and January 14, 1988," and "the first two weeks in February, 1988." Since the State's instructions conformed to the IPI instructions, and since the verdict forms set forth the dates of the offenses, the defendant's counsel did not commit error in failing to object to the instructions.

In addition, the record reflects that the defendant's attorney did object to the State's instruction (IPI Criminal 2d No. 3.01) which contained the language that the State need not show that the offenses occurred at the particular times charged. However, it is also due to defense counsel's statements that this instruction was given. The committee note under this particular instruction states that the instruction should be given only when there is a variance between the date alleged and the evidence (IPI Criminal 2d No. 3.01, Committee Note). Defense counsel, in his second motion for mistrial, argued that there should be a directed verdict on the counts involving the defendant's acts occurring in October 1986 as the evidence showed that the acts may have occurred in August, September, or October 1986, and the jury would have to speculate about what evidence applied to these counts. Because of these statements by defense counsel and because there was a variance between the date alleged and the evidence, this instruction was properly given. Even if the defendant had not objected to the giving of this instruction, such failure would not have been error. Therefore, we find that the defendant's counsel's representation was not deficient for failing to object to the State's instructions.

The next subissue presented by the defendant is that his counsel was ineffective because he failed to object to the prosecutor's improper closing argument. The particular statements to which the defendant takes issue are:

> "And the Court's going to tell you to take into account the memory of the witnesses, their manner while testifying, the reasonableness of the testimony in light of all the evidence, and any interest or bias that a particular witness has while they are testifying. [The complainant] took the stand and she told you

what happened at New Hill when she was washing the dishes with [her sister] and she got hit hard enough to be knocked down. She told you what she remembered of that incident a long time ago when she was a little kid. And the defendant tells you he doesn't think it happened. [The complainant] tells you about being face down with her nose in the carpet next to her brother and sister and he tells you it didn't happen. [The complainant] tells you about feeling so victimized that she had to hide in the broom closet, this little girl, and he says it didn't happen. [The complainant] tells you that Dad took her for a car ride ostensibly to go get some flour when she was 7 or 8 years old and parked that car and put her in the back seat and made her take off her clothes and raped her. And raped her. And [the complainant] told you that he said, 'All Daddys do this to their little girls.' And he says it didn't happen. And when [the complainant] told you about when the cops came to their house and told you what had been going on he said they came because they were too noisy. And [the complainant] told you when she was sitting at a table doing her homework, that he was so strict about, he walked up and he punched her so hard that it ripped open a gash on her head and she went to the hospital and she had stitches. And he says she fell off the couch."

And:

"Counsel says that it is not bad to discipline your children, it's not bad to be strict with your children. I submit to you from what the evidence was that you heard it is bad to whip them. It is bad to send them to the hospital. It is bad to make them have stitches. It is bad to make your daughter submit to forced sex. The testimony of [the complainant] was that Mr. Singleton frequently referred to her by very uncomplimentary names."

The defendant argues that the foregoing statements by the prosecutor in his closing argument urged the jury to use the testimony of the defendant's physical abuse, i.e., the other crimes, as evidence of his propensity to commit crimes, and that the defendant should be punished for these acts. We determine that these statements by the prosecutor do not constitute reversible error or even harmless error. The first statement referred to by the defendant is taken out of context. When the prosecutor's statement is viewed as a whole, it is clear that the prosecutor was pointing out to the jury the contrasts between the defendant's and the complainant's testimony, thereby emphasizing that the jury's decision rested on the credibility of the parties. It has been held that the credibility of the witnesses is a proper

subject for closing arguments. (*Richardson*, 123 Ill. 2d 322, 528 N.E.2d 612.) Because the prosecutor's comments pertained to the credibility of the witnesses, it was not erroneous. The prosecutor's remarks were also based upon the evidence presented at trial. It is well established that a prosecutor is given wide latitude in closing arguments, and if the closing argument is based upon evidence presented at trial, there is no error. *People v. Morrison* (1985), 137 Ill. App. 3d 171, 484 N.E.2d 329.

The second statement objected to by the defendant occurred in the prosecutor's rebuttal argument. In the defendant's closing argument, he portrayed himself as a strict disciplinarian and the complainant as a rebellious, spiteful daughter. The prosecutor's remarks in his rebuttal argument were a response to this portrayal of the defendant, and the prosecutor argued that the defendant's actions went beyond those of a strict disciplinarian. Thus, the prosecutor's second statement was invited by the defendant's closing argument. A defendant cannot claim prejudice where the prosecutor's arguments were invited by the defendant's argument. (*Richardson*, 123 Ill. 2d 322, 528 N.E.2d 612.) We also note that the jury was admonished that closing arguments of counsel were not evidence and that if the arguments did not correspond to the evidence, the jury should disregard the attorneys' statements. Therefore, the prosecutor's arguments were not prejudicial or erroneous, and defense counsel was not ineffective for not objecting to the statements.

■ The defendant's third subissue under the issue of ineffective assistance of counsel is that his counsel did not argue at his motions for mistrial that the State's opening argument was highly improper. Without going into exhaustive detail, suffice it to say that the defendant's counsel was not ineffective in this regard for he did object to the State's opening statement in his first motion for mistrial made during the testimony of the State's first witness.

Lastly, under the issue of ineffective assistance of counsel, the defendant summarizes various alleged errors by his counsel and argues that these errors were not harmless. The defendant goes on to argue that where, as here, the evidence is closely balanced, the cumulative errors by counsel provided him ineffective assistance of counsel. We will not reiterate the evidence given in the statement of facts presented at the beginning of this opinion, but, nevertheless, we do not find that the evidence in this case was closely balanced. The complainant's testimony was clear and convincing, and the defendant's testimony, while mostly denial, did correspond in certain aspects to the complainant's testimony. We find that the defendant's counsel's con-

duct was reasonable and well-above-average representation, for counsel objected assiduously to the admittance of evidence and thoroughly cross-examined each witness. Defense counsel also presented a defense that the complainant was a rebellious, angry child that had filed the charges out of spite because her father had tried to prevent her from marrying and because he had threatened to file charges against the father of her child. The defendant did not show that his representation was below a reasonable standard, and because the complainant's testimony was clear and convincing, it cannot be determined that the outcome of the defendant's trial would have been different if the alleged errors had not occurred. *Albanese*, 104 Ill. 2d 504, 473 N.E.2d 1246.

■ The third issue raised by the defendant on appeal is that the court abused its discretion when it failed to grant his motions for mistrial in two instances. The first motion for mistrial made by the defendant was during the State's first witness's testimony. At that time, the defendant contended that the State's opening statement was prejudicial to him and he should be granted a mistrial. The court denied the defendant's motion. The defendant contends that this motion was erroneously denied as the State's opening argument presented prejudicial information to the jury which was not proved by evidence at trial.

The second motion for mistrial, which the defendant contends was erroneously denied, was made at the close of the State's case. The basis for this motion was that the testimony of other crimes by the complainant's stepmother, brother, and sister, admitted over the defendant's objection, was more prejudicial than probative and was irrelevant. The court again denied the motion for mistrial but determined that the testimony of the three witnesses was inadmissible. The court had initially allowed the witnesses' testimony for the limited purpose of proving the element of endangering or threatening the victim's life for the offense of aggravated criminal sexual assault. The court had admonished the jury accordingly. However, at the close of the State's case, the court instructed the jury to disregard the entire testimony of these witnesses. It is the defendant's contention that the court's denial of the second motion for mistrial was an abuse of discretion as the testimony was extremely prejudicial and a curative instruction was insufficient. Defendant argues that "no rational reasonable person could ever dismiss such shocking testimony from his decision-making process. Nor could any reasonable juror remove any repulsive feelings of [*sic*] defendant that such testimony unquestionably created."

The law is well settled that the decision to grant a mistrial is within the discretion of the circuit court, and unless there appears that there was a manifest necessity for a mistrial or the ends of justice would be affected by the continuance of the trial, the court's decision will not be overturned on review. (*People v. Alvarez* (1989), 186 Ill. App. 3d 541, 542 N.E.2d 737; *People v. Wills* (1987), 153 Ill. App. 3d 328, 505 N.E.2d 754.) In determining whether the court abused its discretion in denying a motion for mistrial, it must appear that the jury was so influenced and prejudiced that it could not be fair and impartial, and that the damaging effect on the jury could not be removed by admonitions or instructions. (*Alvarez*, 186 Ill. App. 3d 541, 542 N.E.2d 737.) With these principles in mind, we address the defendant's specific concerns.

To include matters in opening statements which are not later proved at trial is improper if it is done with the prosecutor's foreknowledge. (*People v. Trass* (1985), 136 Ill. App. 3d 455, 483 N.E.2d 567.) However, such error is reversible only where the impropriety is attributable to the deliberate misconduct of the prosecutor and results in substantial prejudice to the defendant. *Trass*, 136 Ill. App. 3d 455, 483 N.E.2d 567.

With two exceptions, the statements in the prosecutor's opening statements to which the defendant objects were proved by testimony presented at trial; however, the defendant also asserts that the prosecutor's statements about his other bad acts prejudiced the jury against him and were therefore improper. The two statements by the prosecutor which were not proved at trial were: the prosecutor's statement regarding the defendant's striking of the complainant's sister because she had been patted on the back by a Korean student, and the defendant could not stand to have someone "not white" touch her; and the prosecutor's statement about the complainant's sister's attempted suicides.

We conclude that the State's opening statements did not meet the criteria for reversible error. First, the prosecutor's statements about the defendant's other bad acts were testified to by all of the State's witnesses, including the complainant. We determined earlier in this opinion that this evidence of other bad acts was admissible because it established the nature of the defendant's relationship with the complainant, his intent, and his manipulation through intimidation and fear which allowed him to accomplish his sexual molestation of the complainant. Therefore, the prosecutor's opening statements about this evidence were not error.

Next, the failure to prove at trial the comments by the prosecutor in his opening statement was not a result of deliberate misconduct by the prosecutor. The defendant presented a motion *in limine* after the State's opening statement had been made. In the motion *in limine*, the defendant sought exclusion of certain evidence; however, the court granted the defendant's motion only with regard to the attempted suicides and to the defendant's bigotry and racial intolerance. Because of the court's ruling, the State was foreclosed in presenting evidence which would support the prosecutor's comments made in his opening statement. The State's failure to prove the statements resulted from the court's ruling and not from the State's deliberate misconduct. We also note that the jury was admonished by the court, both before the opening statements were made and before their deliberation, that opening statements were not evidence. Thus, the court did not abuse its discretion in denying the defendant's first motion for mistrial.

Similarly, the denial of the defendant's second motion for mistrial because of the admission of the complainant's stepmother's, brother's, and sister's testimony, which the court instructed the jury to disregard, was not an abuse of the court's discretion. The court admonished the jury before each of these witnesses' testimony that their testimony was being admitted for a limited purpose only, and that the jury was not to consider the testimony for any other purpose. We previously concluded that these three witnesses' testimony was admissible as it established the defendant's relationship to the complainant, his intent, and his ability to manipulate the members of his family, and was corroborative of the complainant's testimony. Although the testimony of the defendant's other bad acts may be "repulsive" as the defendant contends, those other bad acts were no more reprehensible or repulsive than the complainant's testimony of the defendant's regular sexual molestation of her. The evidence of the defendant's guilt was established convincingly through the complainant's testimony so that even if the stricken testimony was determined to be inadmissible, the three witnesses' testimony would have been considered harmless error only. The court did not abuse its discretion in denying the defendant's second motion for mistrial as the jury was not so prejudiced that it could not render a fair and impartial decision.

■ The defendant's last issue raised on appeal is that all of his convictions, save one, must be vacated as his convictions are based upon the same physical act. The defendant asserts that because the jury was instructed that the State was not required to prove that the crimes were committed on the dates alleged, the jury was free to use

any one of the sexual assaults to sustain all of his convictions. Alternatively, the defendant argues that his convictions for aggravated criminal sexual abuse cannot stand as these convictions are lesser-included offenses of criminal sexual assault. We first consider the defendant's alternative argument.

In *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, the supreme court determined that convictions and sentences on lesser-included offenses cannot stand, but that multiple convictions and sentences can be imposed where a defendant has committed several acts, despite the interrelationship of the acts, if each of the acts would support a different offense. Thus, if as the defendant argues his convictions for aggravated criminal sexual abuse are lesser-included offenses of criminal sexual assault, his convictions and sentences for these offenses cannot stand. However, aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(b)) has been held not to be a lesser-included offense of criminal sexual assault when the criminal sexual assault offense is based upon section 12—13(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(3)), the reason being that the "sexual conduct," *i.e.*, the touching of the complainant's vagina and the fondling of her breasts, required under the aggravated criminal sexual abuse statute (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(b)) is a different act than the "sexual penetration," *i.e.*, in this case the act of sexual intercourse between the defendant and the complainant, required under section 12—13(a)(3) (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(3)). *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 497 N.E.2d 1212.

Here, the complainant testified that the defendant touched her vagina with his hands, in addition to testifying to his sexual penetration of her. This evidence would support one of the convictions for aggravated criminal sexual abuse, as it is a separate act which would sustain a different offense, even though the act was interrelated with the defendant's sexual penetration of the victim. Similarly, the complainant also testified that the defendant had fondled her breasts on an occasion separate from when he touched her vagina. This act also supported a separate offense, despite its interrelationship with the defendant's sexual penetration of her at the time, and would sustain the other conviction for aggravated criminal sexual abuse. Thus, under the reasoning of *King*, the defendant's convictions for aggravated criminal sexual abuse were not lesser-included offenses of criminal sexual assault but were separate and distinct acts supporting separate convictions and sentences.

■ Further, the defendant's argument that his convictions, with the exception of one offense, must be vacated as the convictions were based upon the same physical act is without merit. As we noted previously in this opinion, the verdict forms provided to the jury gave separate time periods for each of the offenses. The complainant's testimony established clearly and convincingly that the acts necessary to support the convictions occurred during each of the time periods and was sufficient to support convictions of four separate acts by the defendant. The defendant's argument in this regard appears to be sheer speculation.

For the foregoing reasons, the judgment of the circuit court of Jackson County is modified by reducing the conviction for aggravated criminal sexual assault to criminal sexual assault and by imposing a sentence of 15 years' imprisonment for this conviction; however, the court's judgment, in all other respects, is affirmed.

Judgment affirmed as modified.

CHAPMAN and GOLDENHERSH, JJ., concur.