(No. 90969.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOSHUA T. DAVIS, Appellant.

*Opinion filed January 25, 2002.—Rehearing denied April 1, 2002.*

Robert Agostinelli, Deputy Defender, and Thomas A. Karalis, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellant.

James E. Ryan, Attorney General, of Springfield, and Ted J. Hamer, State's Attorney, of Cambridge (Joel D. Bertocchi, Solicitor General, and William L. Browers and Russell K. Benton, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Defendant Joshua T. Davis was found guilty of armed violence (720 ILCS 5/33A—2 (West 1992)), aggravated battery (great bodily harm) (720 ILCS 5/12—4 (West 1998)), and battery (720 ILCS 5/12—3 (West 1998)), after it was stipulated at a bench trial, in the circuit court of Henry County, that, on July 2, 1998, defendant shot BBs from a Crossman .177-caliber pellet/BB gun at Matthew Mulder and Cody Junior. Although Mulder sustained only minor injuries, Junior lost his left eye. The trial court found that the pellet/BB gun used by defendant was a category I dangerous weapon within the meaning of the armed violence statute (720 ILCS 5/33A—1(b) (West 1992)). Accordingly, the armed violence offense was a Class X felony for which defendant was sentenced to the minimum term of six years' imprisonment. Defendant was also sentenced to a concurrent jail term of 364 days on the simple battery conviction and was ordered to pay restitution.

On appeal, a divided court upheld the convictions and sentences. 318 Ill. App. 3d 893. We granted defendant's petition for leave to appeal. 134 Ill. 2d R. 651(a).

The narrow issue before this court is one of first impression. We are asked to determine whether a pellet/BB gun, of the sort used in this case, is a danger-

ous weapon within the meaning of the armed violence statute.

## ANALYSIS

At the time defendant committed the acts which led to his conviction, the armed violence statute provided as follows:

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." 720 ILCS 5/33A—2 (West 1992).[1]

The legislature defined the term "dangerous weapon" in section 33A—1. Under that section, "[a] person is considered armed with a dangerous weapon *** when he carries on or about his person or is otherwise armed with a category I or category II weapon." 720 ILCS 5/33A—1(a) (West 1992). A category I weapon is defined as "a pistol, revolver, rifle, shotgun, spring gun, or any other firearm, sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto, or any other deadly or dangerous weapon or instrument of like nature." 720 ILCS 5/33A—1(b) (West 1992). A category II weapon is defined as "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." 720 ILCS 5/33A—1(c) (West 1992).

In addition to being charged with armed violence, defendant was charged with two counts of aggravated battery with a firearm, one count of aggravated battery (great bodily harm), and one count of battery. Prior to trial, defense counsel moved to dismiss the counts charging armed violence and aggravated battery with a firearm, arguing that the device used by defendant was

---

[1]The 1992 version of the armed violence statute applies in the case at bar. Although the statute was amended by Public Act 88—680, eff. January 1, 1995, that amendment was invalidated. See *People v. Cervantes*, 189 Ill. 2d 80 (1999).

not a "firearm" as defined in the Firearm Owners Identification Card Act (430 ILCS 65/1.1 (West 2000)). The State opposed the motion, arguing that the device used by defendant, although used to fire BBs, had the capacity to fire tubular pellets and, therefore, was a firearm. See *People v. Green*, 50 Ill. App. 3d 980 (1977).

The trial court initially granted defendant's motion, dismissing the counts charging armed violence and aggravated battery with a firearm. The court found that defendant used a "Crossman 357 model pellet/BB pistol which discharges ammunition by expulsion of compressed gas from a CO2 cylinder" and that "the ammunition used by defendant was a globular projectile (a BB), .177 calibre and the weapon had a maximum velocity of 500.2 feet per second." Although the weapon was also capable of firing a tubular projectile of the same caliber, the trial court concluded that the device used by defendant was not a firearm. Upon reconsideration, however, the court reinstated the armed violence count, finding that the device, though not a firearm, came under the statutory clause "a dangerous weapon or instrument of like character" in that it was "like a firearm."

On appeal, two justices agreed with the trial court that defendant possessed a category I dangerous weapon in that the device, though not a firearm, came within the scope of the "any other dangerous weapon or instrument" clause. One justice dissented in part. Applying the doctrine of *ejusdem generis*, the dissenting justice found that the clause at the end of the category I definition could not be interpreted as encompassing firearm-like weapons such as the pellet/BB gun in this case. The dissenting justice, instead, would have found defendant guilty of armed violence with a category II weapon, holding that the pellet/BB gun was of "like character" to a slungshot. 318 Ill. App. 3d at 898 (Homer, P.J., concurring in part and dissenting in part).

Defendant contends that he was wrongly convicted of armed violence because the pellet/BB gun he used to commit an aggravated battery on Cody Junior was not a "dangerous weapon" within the meaning of the armed violence statute. Defendant argues that the trial and appellate courts erred when they found that the clause "any other deadly or dangerous weapon or instrument of like nature," at the end of the definition of a category I weapon, could be interpreted to encompass the pellet/BB gun he used. Defendant also denies that the pellet/BB gun comes within the scope of the category II definition.

Whether the trial and appellate courts have correctly interpreted the provisions of the armed violence statute is a question of law, which this court reviews *de novo*. *In re D.D.*, 196 Ill. 2d 405 (2001). Our purpose when construing a statute is to ascertain and give effect to the intent of the legislature. *People v. Latona*, 184 Ill. 2d 260, 269 (1998). Courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *Gill v. Miller*, 94 Ill. 2d 52, 56 (1983). The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition. *People v. Lavallier*, 187 Ill. 2d 464, 468 (1999); *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). Moreover, criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute. *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998); *People v. Woodard*, 175 Ill. 2d 435, 444 (1997); *People v. Shinkle*, 128 Ill. 2d 480, 486 (1989).

Applying these principles to the present case, we have carefully examined the statutory definition of a category I weapon to determine whether the pellet/BB gun used by defendant in this case properly falls within its parameters. We find that it does not.

In defining a category I weapon, the legislature specifically named several weapons—pistol, revolver, rifle, shotgun, spring gun, sawed-off shotgun, stun gun or taser, knife with a blade of at least three inches in length, dagger, dirk, switchblade knife, and stiletto. Pellet and BB guns are not specifically referred to in this list of weapons and, consequently, are not *per se* dangerous weapons. *People v. Ptak*, 193 Ill. App. 3d 782, 785 (1990) (any weapon specifically listed in the definition is considered to be a *per se* dangerous weapon). However, in addition to individually naming certain weapons, the provision also uses two inclusive clauses—"any other firearm" and "any other deadly or dangerous weapon or instrument of like nature." We will address each clause separately.

The first clause, "any other firearm," comes in the middle of the provision and at the end of a list of devices generally recognized as "firearms." The lower courts found that the pellet/BB gun used by defendant did not fit within this clause because it was not a "firearm." We agree.

In section 2—7.5 of the Criminal Code of 1961 (720 ILCS 5/2—7.5 (West 2000)), the legislature, in reference to "firearms," states:

> "Except as otherwise provided in a specific Section, 'firearm' has the meaning ascribed to it in Section 1.1 of the Firearm Owners Identification Card Act."

The Firearm Owners Identification Card Act (430 ILCS 65/1.1 (West 2000)) defines "[f]irearm" as "any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas; excluding, however: (1) any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors."

At the same time, the Air Rifle Act (720 ILCS 535/ 0.01 (West 2000)) defines "[a]ir rifle" as "any air gun, air pistol, spring gun, spring pistol, B-B gun, paint ball gun, pellet gun *or any implement that is not a firearm* which impels a breakable paint ball containing washable marking colors or, a pellet constructed of hard plastic, steel, lead or other hard materials with a force that reasonably is expected to cause bodily harm." (Emphasis added.) 720 ILCS 535/1 (West 2000).

Reading these statutes together, it is reasonable to assume that the legislature did not view BB guns, pellet guns and paint ball guns as "firearms" and, consequently, did not intend these devices to be included under the clause "any other firearm" in the armed violence provision. See *Harvel v. City of Johnston City*, 146 Ill. 2d 277, 287 (1992) (" 'It is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. *** Thus, they should all be construed together' "), quoting 2A N. Singer, Sutherland on Statutory Construction § 51.02, at 453 (Sands 4th ed. 1984). Thus, we conclude, as the trial and appellate courts did, that the $CO_2$ powered pellet/BB gun, which had the capacity to fire .177-caliber pellets or BBs at a velocity under 700 feet per second, was not a "firearm" and, accordingly, could not be included in the "any other firearm" clause of the category I definition of a dangerous weapon.

The question, then, is whether the pellet/BB gun fits within the second clause, "any other deadly or dangerous weapon or instrument of like nature," as the lower courts found. On this point, we disagree with the lower courts. Applying the doctrine of *ejusdem generis* and the last antecedent rule, we find that the pellet/BB gun did not come within the scope of this clause and, consequently, was not a category I weapon as defined by the armed violence statute.

The doctrine of *ejusdem generis* provides that when a statutory clause specifically describes several classes of persons or things and then includes "other persons or things," the word "other" is interpreted as meaning "other such like." *Farley v. Marion Power Shovel Co.*, 60 Ill. 2d 432, 436 (1975), quoting *People v. Capuzi*, 20 Ill. 2d 486, 493-94 (1960). See also *People v. Rutledge*, 104 Ill. 2d 394, 397 (1984) (acknowledged that, pursuant to doctrine of *ejusdem generis*, the clause "any other dangerous or deadly weapon," as used in statute defining the offense of unlawful use of weapons, was not intended to include firearms), quoting *People v. Sheldon*, 322 Ill. 70, 73 (1926). The fundamental principle of statutory construction known as the last antecedent doctrine provides that relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding. They do not modify those which are more remote. *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 511-12 (1998); *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 169 (1995); *People v. Bartlett*, 294 Ill. App. 3d 435, 440 (1998)

In the present case, when defining category I weapons, the armed violence statute begins by specifically listing firearm-type weapons by various commonly recognized names, followed by the clause "any other firearm." The definition then goes on to specifically include "sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto." The concluding phrase, "any other deadly or dangerous weapon or instrument of like nature," comes at the end of the list of blade-type weapons. Applying the doctrine of *ejusdem generis* in conjunction with the last antecedent rule, we find that the phrase "any other deadly or dangerous weapon or

instrument of like nature" was intended to refer only to weapons or instruments "such like" the class of blade-type weapons which immediately preceded the clause in the provision, *i.e.*, weapons or instruments that are sharp and have the ability to cut or stab. We do not believe that the clause "any other deadly or dangerous weapon or instrument of like nature" was intended to modify all of the named weapons and, thus, was not intended to include BB guns, pellet guns, paint ball guns or any other weapons, which are not firearms, but are *of like nature* to firearms.

We take notice that the armed violence statute has been in effect since 1967, when it was enacted " 'to respond emphatically to the growing incidence of violent crime.' " *People v. Alejos*, 97 Ill. 2d 502, 507-08 (1983), quoting *People v. Graham*, 25 Ill. App. 3d 853, 858 (1975). The General Assembly, concerned with the possession of weapons during the commission of felonies (*People v. Donaldson*, 91 Ill. 2d 164, 170 (1982)), adopted the armed violence statute to " 'discourage those who contemplate a felonious act beforehand from carrying a weapon when they set forth to perform the act.' " *People v. Drakeford*, 139 Ill. 2d 206, 211 (1990), quoting *Alejos*, 97 Ill. 2d at 509. Our research has revealed a number of cases in which BB guns were used in the course of a crime. See *People v. Johnson*, 323 Ill. App. 3d 284 (2001) (metal BB gun used to threaten and strike rape victim was a dangerous weapon within the meaning of the offense of armed robbery); *People v. Williams*, 315 Ill. App. 3d 22 (2000) (metal pellet gun used to hit decedent on the head); *People v. Paul*, 304 Ill. App. 3d 404 (1999) (BB gun used in armed robbery); *People v. de la Fuente*, 92 Ill. App. 3d 525, 536 (1981) (pellet gun used as a bludgeon was *per se* dangerous weapon for purposes of armed robbery); *People v. Greer*, 53 Ill. App. 3d 675 (1977) (unloaded gas pellet pistol used); *People v. Hill*, 47 Ill. App. 3d 976 (1977)

(unloaded, uncocked metal air pistol used to intimidate victim of robbery; although not a dangerous weapon *per se,* could be used as dangerous weapon and supported conviction for armed robbery); *People v. Ratliff,* 22 Ill. App. 3d 106 (1974) (.22-caliber starter pistol used in robbery); *People v. Trice,* 127 Ill. App. 2d 310 (1970) (same). In none of these cases were defendants ever charged with armed violence.

In addition, in cases where armed violence has been charged and the defendant was armed with a weapon which was not specifically listed in the statute, reliance was placed on the "any other dangerous weapon or instrument of like nature" clause because the weapon was of like nature to the blade-type weapons listed. See *People v. Ptak,* 193 Ill. App. 3d 782 (1990) (broken beer bottle); *People v. Thornton,* 145 Ill. App. 3d 669 (1986) (broken beer bottle); *People v. Chrisos,* 142 Ill. App. 3d 747 (1986) (sharp piece of glass); *People v. Samier,* 129 Ill. App. 3d 966 (1985) (knife with blade less than three inches); *People v. Hall,* 117 Ill. App. 3d 788, 803 (1983) (knife of unidentified length). Thus, our construction of the armed violence statute—that BB guns and pellet guns should not be interpreted as coming within the scope of the "any other deadly or dangerous weapon or instrument of like nature" clause and, thus, are not category I dangerous weapons within the meaning of the armed violence statute—appears to comport with past practice.

Although we read the statute as not including pellet and BB guns, we note that, even if there were some ambiguity, we would be constrained by law to interpret this criminal statute in a lenient manner. *People ex rel. Gibson v. Cannon,* 65 Ill. 2d 366, 370-71 (1976) (where a criminal statute is capable of two constructions, courts must adopt the one that operates in favor of the accused). The rule of lenity is particularly applicable where the criminal statute operates as an enhancement provision.

*People v. Alejos*, 97 Ill. 2d 502, 512 (1983); *People v. Mc-Carty*, 94 Ill. 2d 28, 34-35 (1983). See also *People v. Donaldson*, 91 Ill. 2d 164, 169 (1982); *People v. Hobbs*, 86 Ill. 2d 242, 246 (1981); *People v. Haron*, 85 Ill. 2d 261 (1981). The armed violence statute is an enhancement provision which "enhances the severity of the underlying felony and upgrades the punishment available for it to Class X." *Alejos*, 97 Ill. 2d at 508. See also *People v. Donaldson*, 91 Ill. 2d 164, 168 (1982). The statute mandates a severe penalty, not only to punish the criminal, but to deter the use of weapons in the commission of a felony, thus affording society greater protection. *Alejos*, 97 Ill. 2d at 509. Because of the nature of the armed violence statute, any ambiguity should be appropriately resolved in defendant's favor.

In sum, we find, based on established principles of statutory construction, that BB guns and pellet guns of the sort used in the case at bar are not dangerous weapons within the meaning of the armed violence statute.

For the same reasons, neither was the pellet/BB gun used by defendant a category II dangerous weapon, as the dissenting appellate justice found. A category II dangerous weapon is defined in the statute as "a bludgeon, blackjack, slungshot, sand-bag, sand-club, metal knuckles, billy or other dangerous weapon of like character." 720 ILCS 5/33A—1(c) (West 1992). Again, pellet and BB guns are not specifically named in this listing. Furthermore, although a metal pellet/BB pistol might be capable of being used as a bludgeon, it is not typically identified as such and, under the doctrine of *ejusdem generis*, cannot be interpreted to be "of like character" to the bludgeon-type weapons included in the category II listing.

## CONCLUSION

For the reasons stated, we find that defendant was

not guilty of committing armed violence when he discharged the pellet/BB gun and struck Cody Junior. We vacate defendant's conviction for armed violence.

*Conviction vacated.*