THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN T. McCLEARY, Defendant-Appellant.

Fourth District   No. 4—03—0759

Argued June 23, 2004.—Opinion filed November 16, 2004.

COOK, J., dissenting.

Ronald F. Tulin (argued) and Christopher Wetzel, both of Ronald Tulin, Ltd., of Charleston, for appellant.

C. Steve Ferguson, State's Attorney, of Charleston (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Ewick (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2002, the State charged defendant, Brian McCleary, with manufacturing a controlled substance (900 grams or more of any substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof) (720 ILCS 570/401(a)(6.5)(D) (West 2000)), and possession of a controlled substance (900 grams or more of any substance containing methamphetamine or any salt of an optical isomer of methamphetamine) (720 ILCS 570/402(a)(6.5)(D) (West 2000)). Following a January 2003 bench trial, the trial court found defendant guilty of both offenses. In September 2003, the court sentenced defendant to 17 years in prison on the manufacture-of-a-controlled-substance conviction but did not sentence him as to the unlawful-possession conviction.

Defendant appeals, arguing that (1) he did not effectively waive his right to a jury trial, (2) he was denied his sixth-amendment right to effective assistance of trial counsel (U.S. Const., amend VI), (3) his sentence violated the proportionality clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), and (4) sections 401(a)(6.5)(D) and 402(a)(6.5)(D) of the Illinois Controlled Substances Act (Controlled Substances Act) (720 ILCS 570/401(a)(6.5)(D), 402(a)(6.5)(D) (West 2000)) violate the due-process clauses of the United States and Illinois Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 2). We disagree and affirm.

I. BACKGROUND

In January 2002, defendant was on probation for a misdemeanor domestic-battery conviction, and Pam Pharis was his supervising

probation officer. As a condition of his probation, defendant was required to consent to home visits or searches of his residence suggested by Pharis. Evidence at defendant's January 2003 bench trial showed that around 8:30 p.m. on January 16, 2002, Pharis, along with probation officers Steve Kelly and Jana Pamprin, went to defendant's residence to conduct a home visit. Kelly went to defendant's door, and Pharis and Pamprin remained in a car.

After defendant opened his door, Kelly saw cash and several bags of green leafy material on the living room table. Because Kelly suspected the green leafy material was cannabis, he arrested defendant. Kelly then asked Pharis and Pamprin to come into defendant's residence to assist him.

The officers found several items of drug paraphernalia and a methamphetamine laboratory on defendant's back porch. Pharis called the Mattoon police department for assistance, which then contacted the East Central Illinois Task Force. Task force members seized two liquid substances that weighed 440 grams and 746 grams, respectively, from defendant's methamphetamine laboratory. They also seized 77 grams of a powder substance from defendant's trash can. Both the liquids and powder tested positive for the presence of methamphetamine.

Following the bench trial, the trial court found defendant guilty of both charges. Specifically, the court found that (1) the evidence established beyond a reasonable doubt that defendant knowingly possessed and manufactured more than 900 grams of a substance containing methamphetamine, (2) the substances needed further chemical processing before the methamphetamine could be used, and (3) sections 401(a)(6.5)(D) and 402(a)(6.5)(D) of the Controlled Substances Act do not require that the substance containing methamphetamine be usable. The court later sentenced defendant as stated.

This appeal followed.

## II. ANALYSIS

### A. Right to a Jury Trial

Defendant first argues that his jury-trial waiver was ineffective because the trial court incorrectly advised him of the penalties he faced. We disagree.

■ Initially, we note that defendant raises this issue for the first time on appeal. A defendant forfeits an issue for review if he fails to object at trial and include the issue in his written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 185-86, 522 N.E.2d 1124, 1129 (1988). A forfeited issue may be reviewed under the plain-error doctrine if the evidence is closely balanced or the alleged error was so serious it

deprived the defendant of a fair trial. *Enoch*, 122 Ill. 2d at 199, 522 N.E.2d at 1136. Because this case concerns the knowing waiver of the fundamental right to a jury trial, we consider this issue under the plain-error doctrine. *In re R.A.B.*, 197 Ill. 2d 358, 363, 757 N.E.2d 887, 891 (2001).

Defendant claims that this issue is controlled by the supreme court's decision in *People v. Weakley*, 45 Ill. 2d 549, 259 N.E.2d 802 (1970). However, defendant's reliance on *Weakley* is misplaced. The defendant in *Weakley* challenged the validity of his guilty plea, not the validity of his jury waiver. Before a defendant can plead guilty, Supreme Court Rule 402(a) (177 Ill. 2d R. 402(a)) requires that the trial court admonish the defendant of the consequences of the plea, the nature of the charges against him, and the maximum sentence he faces. These admonitions are required before a defendant can knowingly and intelligently plead guilty. On the other hand, a trial court is not required to give any particular admonishments to a defendant before he waives his right to a jury trial. The only requirement is that under the particular facts and circumstances of the case, a defendant's waiver be knowingly and intelligently made. *R.A.B.*, 197 Ill. 2d at 364, 757 N.E.2d at 891.

■ At the beginning of the December 2002 pretrial hearing, the special assistant State's Attorney informed the trial court that defendant wanted to waive his right to a jury trial. Defense counsel agreed and informed the court that defendant was prepared to sign a written jury waiver. The court then admonished defendant about his right to a jury trial. The court also assured that (1) defendant understood what a jury trial was and (2) defendant's waiver was voluntary and knowing. The court also mistakenly informed defendant that he faced only 6 to 30 years in prison and a maximum fine of $25,000 if convicted of manufacturing a controlled substance. (Defendant was eligible to be sentenced to between 15 to 60 years in prison.)

Reviewing the particular facts and circumstances of this case, we conclude that defendant knowingly and intelligently waived his right to a jury trial and the trial court's erroneous sentencing admonition did not influence or prejudice defendant's decision. In that regard, we note that defense counsel informed the court that defendant wished to sign a written jury waiver before the court misstated the applicable sentencing range. After the misstatement, the court explained both the functions and the workings of a jury trial to defendant. Defendant indicated that (1) he understood what a jury trial was and (2) it was his choice whether to waive that right. Defendant then signed a written jury waiver in the court's presence. Thus, on this record, we

conclude that defendant knowingly and intelligently waived his right to a jury trial.

## B. Ineffective Assistance of Counsel

Defendant next argues that he was denied effective assistance of trial counsel in that counsel (1) failed to file a motion to suppress evidence found during the search, (2) failed to advise defendant of his right to testify, and (3) ignored his request to testify. We disagree.

A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063 (1984). A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for the deficient performance, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Buss*, 187 Ill. 2d 144, 212-13, 718 N.E.2d 1, 39 (1999). If a reviewing court finds that a defendant suffered no or *de minimus* prejudice, it need not decide whether counsel's performance was constitutionally deficient. *Buss*, 187 Ill. 2d at 213, 718 N.E.2d at 39.

### 1. *Counsel's Failure To File a Motion To Suppress*

■ Defendant first contends that he was denied effective assistance of trial counsel when counsel failed to move to suppress evidence found during the search of defendant's residence. We disagree.

The decision to file a motion to suppress is a matter of trial strategy, and counsel's decision will be accorded great deference. *People v. Lundy*, 334 Ill. App. 3d 819, 830, 779 N.E.2d 404, 414 (2002). To establish prejudice, a defendant must show a reasonable probability that (1) the motion would have been granted and (2) the outcome of the trial would have been different had the evidence been suppressed. A reasonable probability is one sufficient to undermine confidence in the outcome. Failure to file a motion to suppress does not establish incompetent representation when the motion would be futile. *Lundy*, 334 Ill. App. 3d at 830, 779 N.E.2d at 414.

In *People v. Durgan*, 346 Ill. App. 3d 1121, 1142, 806 N.E.2d 1233, 1250 (2004), this court recently held that adjudication of a defendant's claim of ineffective assistance based on trial counsel's failure to move to suppress evidence is almost never appropriate on direct appeal. In so holding, we reasoned that "absent a motion to suppress, it is highly unlikely that the State would garner its resources to prove the propriety of the officers' actions." *Durgan*, 346 Ill. App. 3d at 1142, 806 N.E.2d at 1250. However, in this case, the State garnered its resources and presented at defendant's trial both Pharis's and Kelly's

detailed testimony as to the circumstances surrounding their search of defendant's residence. We thus address defendant's ineffective-assistance claim on the merits.

A probationer's home is protected by the fourth amendment's requirement that searches be reasonable. U.S. Const., amend. IV; *People v. Johns*, 342 Ill. App. 3d 297, 300, 795 N.E.2d 433, 437 (2003). In determining whether the search was reasonable, courts will balance the level of intrusion on the probationer's personal privacy against the degree of need for the search to promote legitimate government interests. *People v. Lampitok*, 207 Ill. 2d 231, 249, 798 N.E.2d 91, 103 (2003). Reasonable suspicion exists when articulable facts and the rational inferences from those facts warrant a reasonably prudent officer to investigate further. *Lampitok*, 207 Ill. 2d at 255, 798 N.E.2d at 106.

In this case, Kelly accompanied Pharis, who was defendant's supervising probation officer, on a home visit of defendant's residence. Such a home visit was a mandatory condition of defendant's probation under section 5—6—3 of the Unified Code of Corrections (730 ILCS 5/5—6—3 (West 2002)). After defendant opened the front door but before Kelly entered defendant's residence, Kelly noticed cash and "several bags of green leafy material that [Kelly] suspected to be cannabis on the table in the living room." Kelly's observation during the home visit created a reasonable suspicion that defendant had violated his probation order and criminal activity was occurring. Thus, Kelly's reasonable suspicion was clearly sufficient to justify the search of defendant's home, and defense counsel's filing of a motion to suppress would have been futile. We thus conclude that counsel's performance in that regard was not deficient.

### 2. Counsel's Failure To Advise Defendant Regarding His Right To Testify

■ Defendant next contends that he was denied effective assistance of trial counsel when counsel (1) failed to advise him of his right to testify and (2) ignored his request to testify. We disagree.

In *People v. Kunze*, 193 Ill. App. 3d 708, 726, 550 N.E.2d 284, 296 (1990), this court held that adjudication of a claim of ineffective assistance of counsel is often better made in proceedings on a petition for postconviction relief, where a complete record can be made. However, because defendant's ineffective-assistance-of-counsel claim does not rely on matters outside the record, we address it on the merits.

The decision whether to testify on one's own behalf belongs to the defendant (*People v. Thompkins*, 161 Ill. 2d 148, 177, 641 N.E.2d 371,

384 (1994)), although this decision should be made with the advice of counsel (*People v. Smith*, 176 Ill. 2d 217, 235, 680 N.E.2d 291, 303 (1997)). Advice not to testify is a matter of trial strategy and does not constitute ineffective assistance of counsel unless evidence suggests counsel refused to allow the defendant to testify. *People v. DeRossett*, 262 Ill. App. 3d 541, 546, 634 N.E.2d 1257, 1261 (1994). Further, when on appeal a defendant contends he was precluded from testifying, the conviction will not be reversed unless the defendant contemporaneously informed the trial court that he wished to testify. *Smith*, 176 Ill. 2d at 234, 680 N.E.2d at 302.

At the hearing on defendant's motion for a new trial, defendant stated that he wanted to testify that the seized liquid was waste and he could only get 5 to 10 more grams of usable methamphetamine out of the liquid. However, he presented no evidence showing that his trial counsel refused to allow him to so testify. Instead, defendant's sister, who attended a meeting between defendant and his counsel, testified that counsel did not tell defendant not to testify but instead told him he would not talk about defendant testifying at that time. Defendant testified that counsel "did not say to testify and he did not say not to testify." In addition, the record shows that defendant failed to inform the trial court that he wished to testify. Accordingly, we conclude that defendant has failed to show that his counsel was ineffective in failing to call him as a witness.

In so concluding, we note that this issue could have been avoided entirely if the trial court had followed the suggestion this court made in *People v. Frieberg*, 305 Ill. App. 3d 840, 852, 713 N.E.2d 210, 219 (1999). In that case, we noted that "because the decision whether to testify at trial lies ultimately with a defendant, issues involving how that decision was made lurk—like an unexploded bomb—in every case resulting in a conviction." *Frieberg*, 305 Ill. App. 3d at 852, 713 N.E.2d at 219. We thus suggested that to "defuse" this potentially "explosive situation," trial courts

> "*in every criminal case* [should] take the few seconds needed, after the State has rested its case in chief and before the presentation of the defense case, to admonish the defendant personally that he alone possesses the right to choose whether to testify on his own behalf, and that he should make that decision after consulting with counsel. Trial courts should emphasize to the defendant that whatever trial counsel's advice on this point may be, counsel cannot force the defendant to testify, nor can counsel prevent the defendant from testifying. For good measure, the court should once again inquire of the defendant before he testifies (or the defense rests without his testimony) to ensure that his decision about this

matter was his alone and not coerced." (Emphasis in original.) *Frieberg*, 305 Ill. App. 3d at 852, 713 N.E.2d at 219.

We reaffirm *Frieberg* and once again urge trial courts to take a few seconds to properly admonish defendants so as to insulate the record from attacks such as the one this case presents.

## C. Constitutionality of Sections 401(a)(6.5)(D) and 402(a)(6.5)(D)

Defendant next argues that sections 401(a)(6.5)(D) and 402(a)(6.5)(D) of the Controlled Substances Act violate the proportionality clause of the Illinois Constitution and the due-process clause of the United States and Illinois Constitutions.

Legislative enactments are afforded a presumption of validity. *People v. Hill*, 199 Ill. 2d 440, 443, 771 N.E.2d 374, 376 (2002). The party challenging the validity of a statute bears the burden of proving its invalidity. *Hill*, 199 Ill. 2d at 443, 771 N.E.2d at 376.

■ Initially, we note that defendant lacks standing to challenge the validity of section 402(a)(6.5)(D) because he was not sentenced under that provision and therefore is not directly affected by it. See *People v. Knight*, 133 Ill. App. 3d 248, 256, 478 N.E.2d 1082, 1089-90 (1985) (a defendant who is not sentenced under a specific sentencing provision cannot challenge the constitutional validity of that sentencing provision because he is not directly affected by the statute). Thus, our analysis concerns only section 401(a)(6.5)(D) of the Controlled Substances Act (720 ILCS 570/401(a)(6.5)(D) (West 2000)).

### 1. *Proportionality Clause*

■ Defendant contends that his sentence violates the proportionality clause because (1) his conviction and sentence were based on the overall weight of the substance he allegedly manufactured, not on the amount of usable methamphetamine that was contained therein, and (2) under section 401(a)(6.5)(C) of the Controlled Substances Act, a defendant who manufactured more usable methamphetamine than defendant could be subject to a possible sentence of only 12 years in prison (720 ILCS 570/401(a)(6.5)(C) (West 2000)).

The proportionality clause of the Illinois Constitution requires "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A criminal penalty violates the clause if (1) it is so cruel, degrading, or wholly disproportionate to the offense committed as to shock the moral sense of the community; (2) when similar offenses are compared, the conduct that creates a less-serious threat to the public health and safety is punished more severely; or (3) identical offenses are given different sentences. *Hill*, 199 Ill. 2d at 452, 771 N.E.2d at 381.

In *People v. Butler*, 304 Ill. App. 3d 750, 709 N.E.2d 1272 (1999), the First District considered the proportionality argument defendant now makes, albeit as to section 401(a)(2)(D) of the Controlled Substances Act (720 ILCS 570/401(a)(2)(D) (West 2000)). In that case, the defendant was carrying cocaine diluted in bottles of wine or champagne and was charged based on the overall weight of the liquid, not the pure cocaine. The First District held that the plain language of the statute was clear: " 'any substance containing cocaine' " unequivocally contemplated the inclusion of more than pure cocaine in the weight calculation. *Butler*, 304 Ill. App. 3d at 758, 709 N.E.2d at 1278, quoting 720 ILCS 570/401(a)(2)(D) (West 1996). The court looked to the definition of "substance" and then to the definition of "mixture" included within the definition of "substance." The court concluded that the "unambiguous language of this statute evinces the intent of the legislature that it did not intend to exclude the liquid within which the cocaine is diluted." *Butler*, 304 Ill. App. 3d at 758, 709 N.E.2d at 1278. "If the legislature intended to exclude the liquid, it could have specifically articulated such an exception." *Butler*, 304 Ill. App. 3d at 759, 709 N.E.2d at 1279. Further, the court held that including the liquid in the weight calculation was not cruel, degrading, or wholly disproportionate to the offense. *Butler*, 304 Ill. App. 3d at 759, 709 N.E.2d at 1279.

The plain language of section 401(a)(6.5)(D) of the Controlled Substances Act is also clear. A defendant is guilty of unlawful manufacture of a controlled substance if the defendant manufactures "900 grams or more of *any substance containing methamphetamine* or any salt of an optical isomer of methamphetamine, or an analog thereof." (Emphasis added.) 720 ILCS 570/401(a)(6.5)(D) (West 2000). This phrase unequivocally contemplates the inclusion of more than usable methamphetamine in the weight calculation. See *Butler*, 304 Ill. App. 3d at 758, 709 N.E.2d at 1278 ("[U]nambiguous language of this statute evinces the intent of the legislature that it did not intend to exclude the liquid within which the cocaine is diluted ***").

In addition, when comparing similar offenses, Illinois courts apply a two-step analysis. First, courts consider whether the purposes of the compared offenses are distinct such that comparative proportionality review is not appropriate. Second, if the offenses are related, courts consider whether the offense with the harsher penalty is more serious than the offense with the less-severe penalty. *Hill*, 199 Ill. 2d at 454, 771 N.E.2d at 382-83.

Sections 401(a)(6.5)(C) and 401(a)(6.5)(D) are related, the only difference being the weight of the substance containing methamphetamine. While we must determine if the more serious of the two of-

fenses has a less-severe penalty, we are mindful that the legislature is in a better position than this court to identify and remedy the evils confronting our society and is more capable of gauging the seriousness of an offense. *Hill*, 199 Ill. 2d at 454, 771 N.E.2d at 383. Manufacturing methamphetamine is a dangerous activity that not only produces a dangerous controlled substance, but the process itself involves toxic and highly combustible chemicals often used in populated areas. With this understanding, the legislature reasonably could have determined that producing greater amounts of a substance containing methamphetamine created the greater threat to public health and safety. Accordingly, we defer to the legislature's decision.

## 2. *Due-Process Clause*

Defendant also contends that section 401(a)(6.5)(D) of the Controlled Substances Act violates the due-process clauses of both the United States and Illinois Constitutions. Specifically, defendant asserts that because the legislature intended to treat "the unlawful user or occasional petty distributor" differently than "the large-scale, unlawful purveyors and traffickers," section 401(a)(6.5)(D) as applied is not rationally related to a legitimate state interest.

The legislature possesses wide discretion to classify and prescribe penalties for criminal offenses. *People v. Wright*, 194 Ill. 2d 1, 24, 740 N.E.2d 755, 766-67 (2000). A statute violates due process when it is not reasonably related to a public interest to be protected and the means adopted are not a reasonable method of accomplishing that goal. *Wright*, 194 Ill. 2d at 24, 740 N.E.2d at 767. If any set of facts can be reasonably conceived to justify the statute, it will be upheld. See *Wright*, 194 Ill. 3d at 24, 740 N.E.2d at 767.

The desire to punish petty distributors less severely than traffickers is just one of the legislature's objectives under the Controlled Substances Act. *People v. Behnke*, 41 Ill. App. 3d 276, 353 N.E.2d 684 (1976). It was the intent of the legislature that the Controlled Substances Act also:

> "(1) limit access of such substances only to those persons who have demonstrated an appropriate sense of responsibility and have a lawful and legitimate reason to possess them; (2) deter the unlawful and destructive abuse of controlled substances; (3) penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society; (4) acknowledge the functional and consequential differences between the various types of controlled substances and provide for correspondingly different degrees of control over each of the various types; (5) unify where

feasible and codify the efforts of this State to conform with the regulatory schemes of the [f]ederal government and other states to establish national coordination of efforts to control the abuse of controlled substances; and (6) provide law[-]enforcement authorities with the necessary resources to make this system efficacious." 720 ILCS 570/100 (West 2000).

As earlier noted, the legislature could have reasonably determined that producing greater amounts of a substance containing methamphetamine created the greater threat to public health and safety. The penalty scheme is thus reasonably related to these legislative objectives and does not violate the due-process clauses of either the United States or Illinois Constitution.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent.

I have no difficulty with the cases considering the entire weight of the substance where the pure drug is diluted in order to assist in its distribution. The legislature could rationally conclude that a drug can be distributed to a greater number of people in a mixed state and can therefore be considered more dangerous. *People v. Mayberry*, 63 Ill. 2d 1, 9, 345 N.E.2d 97, 101 (1976); *Chapman v. United States*, 500 U.S. 453, 465, 114 L. Ed. 2d 524, 538, 111 S. Ct. 1919, 1927-28 (1991). Even apart from distribution, mixing the drug with another substance may make it more difficult to recognize the drug, thereby hampering law enforcement. *People v. Butler*, 304 Ill. App. 3d 750, 709 N.E.2d 1272 (1999) (cocaine added to wine and placed in champagne bottles); *People v. Kucharski*, 346 Ill. App. 3d 655, 667-68, 806 N.E.2d 683, 693 (2004). The statute contains broad language: "any substance containing methamphetamine." 720 ILCS 570/401(a)(6.5)(D) (West 2000). Despite the broad language of the statute, however, where a controlled substance is unintentionally adulterated, the weight of the adulterating agent must be discounted. *Kucharski*, 346 Ill. App. 3d at 668, 806 N.E.2d at 694 (applying section 401(c)(11) (720 ILCS 570/401(c)(11) (West 2000))). In *Kucharski*, balloons containing drugs were removed from defendant's digestive tract. The drugs were weighed while they were wet and adulterated with defendant's bodily fluids.

Including the full weight of materials that are being processed to

produce methamphetamine presents a different question. Defendant argues that methamphetamine is a powder produced from a liquid and a substantial weight of liquid is required to produce a small amount of methamphetamine. No Illinois cases address this question, but the federal cases are informative. Recognizing that other cases had differed, the Sixth Circuit held that using the entire weight would not be in keeping with the legislative intent, that the defendants were not attempting to increase the amount of methamphetamine they had available to sell but were attempting to distill methamphetamine from the otherwise uningestable byproducts of its manufacture. *United States v. Jennings*, 945 F.2d 129, 137 (6th Cir. 1991). "It seems fortuitous, and unwarranted by the statute, to hold the defendants punishable for the entire weight of the mixture when they could have neither produced that amount of methamphetamine nor distributed the mixture containing methamphetamine." *Jennings*, 945 F.2d at 136. In 1993, the Federal Sentencing Guidelines were amended to make it clear that "mixture or substance" did not include "waste water from an illicit laboratory used to manufacture a controlled substance." 18 U.S.C.S. app. § 2D1.1 (2004).

I certainly agree that manufacturing and selling methamphetamine are terrible crimes and that severe penalties should be imposed. The legislature, however, has chosen to establish different degrees of these terrible crimes. It runs counter to the legislative intent to impose the most severe punishment on all manufacturers, even those who could not have manufactured or distributed anything close to 900 grams of a substance containing methamphetamine. Where there is some ambiguity, we are constrained by law to interpret a criminal statute in favor of the accused, under the rule of lenity. *People v. Davis*, 199 Ill. 2d 130, 140, 766 N.E.2d 641, 647 (2002). If defendant's argument is wrong, the legislature can always amend the statute. If the prosecution's argument is wrong, that incentive may not exist.