NO. 4-07-0663

Filed 9/30/08        IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,  )  Appeal from
          Plaintiff-Appellee,          )  Circuit Court of
          v.                           )  Sangamon County
MICHAEL J. LEACH,                      )  No. 04CF881
          Defendant-Appellant.         )
                                       )  Honorable
                                       )  Leslie J. Graves,
                                       )  Judge Presiding.
_____

          JUSTICE TURNER delivered the opinion of the court:

          In March 2007, a jury convicted defendant, Michael J.

Leach, of eight counts of aggravated criminal sexual assault and

one count of aggravated robbery.  In May 2007, the trial court

sentenced him to consecutive terms of 16 years in prison on 4

aggravated-criminal-sexual-assault counts (6 years plus a 10-year

sentence enhancement on each count).  The court also sentenced

him to a consecutive six-year term for aggravated robbery.

          On appeal, defendant argues (1) the trial court's

imposition of the 10-year sentence enhancement deprived him of

due process and (2) he was denied the proper amount of credit for

time served in custody prior to sentencing.  We affirm as modi-

fied and remand with directions.

I. BACKGROUND

          In September 2004, the State charged defendant by

information with nine counts of aggravated criminal sexual

assault (720 ILCS 5/12-14(a)(1), (a)(4) (West 2004)) and one count of aggravated robbery (720 ILCS 5/18-5(a) (West 2004)) involving the victim, D.S. Defendant pleaded not guilty.

In March 2007, defendant's jury trial commenced. On August 12, 2004, at approximately 8:30 a.m., D.S. heard the doorbell ring. D.S. was working from home that day and was still in her nightgown. D.S. was expecting a delivery, so she answered the door to defendant, an easily identifiable man with two large and elaborate tattoos on his forearms. A couple of weeks earlier, D.S. had purchased a garden pond at a yard sale from Sue Bonansinga, who lived across the alley. Defendant, Bonansinga's son, had helped carry the pond to D.S.'s yard. Defendant returned to D.S.'s house on August 12, 2004, and told her he had extra filters for the garden pond. D.S. took the filters, and defendant left.

Fifteen minutes later, defendant unexpectedly returned to D.S.'s doorstep. Defendant told D.S. he had more supplies for her pond. D.S. thought the "supplies" looked like equipment from a small aquarium but nevertheless took the items into the house because she did not want to make defendant feel foolish or angry. Defendant, who was still standing outside the house, then asked D.S. if he could borrow her phone, claiming he had locked himself out of his house. D.S. handed defendant her phone through the door. Defendant pretended to make a phone call and then, upon

returning the phone to D.S., told her that he had really returned to the house to rape her and forced himself through the door.

Once in the house, a violent chase ensued, where D.S. repeatedly screamed for help and threw items at the window hoping to break the glass. D.S. hoped that her neighbor, Graham Murdock, who often worked outside doing yard work, would hear her. When defendant finally caught D.S., he told her to shut up because he had a knife and a .22-caliber gun and he would stab or shoot her if she did not cooperate. D.S. was convinced that defendant had a weapon and struggled frantically to get away, but defendant put his hands on her neck and over her nose and mouth so that D.S. could no longer scream or breath. Defendant told her if she did not stop screaming, he would kill her. D.S. then nodded, indicating she would cooperate if he would let her breathe.

D.S. then tried a different tack to escape the situation, attempting to manipulate defendant. D.S. told defendant that she had a high-risk pregnancy due to her age and various medical conditions and that, if she had sex, she would lose the baby. D.S. tried to sound more believable by employing various medical terms. Alternatively, D.S. begged defendant not to kill her baby.

Defendant then violently forced oral sex on D.S. D.S. warned defendant that her father was planning to visit that day

and defendant should leave before he got caught. Defendant replied that he would kill D.S.'s father if he arrived. Defendant forced D.S., through several different struggles to both give and receive oral sex. D.S. managed to escape into the bathroom, where she attempted to barricade the door with a movable linen cabinet. Defendant broke down the door, and D.S. sustained cuts from the wood of the door splintering open on her. Defendant dragged D.S. back to the bedroom and tore off her nightgown. Defendant again forced oral sex on D.S. and ejaculated into her hair.

Defendant then ordered D.S. to give him all her money. D.S. gave defendant $35 in cash and offered him her credit card, which he angrily declined. Defendant then started searching D.S.'s home for valuables and drinking alcohol that he found in the home. D.S. pretended to look for her dog, which defendant had earlier thrown against the wall during one of the struggles, and managed to escape out of the house. D.S. ran out of the house screaming rape.

D.S.'s neighbor, Murdock, heard D.S. and came outside. When D.S. saw Murdock, she ran toward him, but she was so hysterical that she did not notice the retaining wall that separated their properties and tripped over it, breaking her foot in several places. D.S. was terrified and disoriented. Murdock was able to calm her and call 9-1-1 on her behalf. While Murdock was

calling 9-1-1, he and D.S. saw defendant exit D.S.'s house barefoot, go into her garage, and drive away in her vehicle.

The police arrived within minutes. D.S. was taken to a hospital, treated for her injuries, and given a sexual-assault examination. The semen in D.S.'s hair matched defendant's deoxyribonucleic acid (DNA). Additionally, an oral swab taken from D.S. contained some of defendant's DNA.

The police ultimately apprehended defendant later that day when he crashed D.S.'s vehicle into a Chicago-area home. In his initial statement to police, defendant claimed he had taken sleeping pills before the incident and could barely remember what he had done. He "remember[ed] something bad happening" and was "sorry for whatever [he] did to the girl." Detective Scott Kincaid interviewed D.S. twice on the day of the incident. Kincaid testified D.S. told him during both interviews that defendant had claimed to have a knife and a gun, though he never showed D.S. either of the weapons.

Defendant exercised his constitutional right not to testify. See U.S. Const., amend. V. Following closing arguments, the jury found defendant guilty of eight counts of aggravated criminal sexual assault and one count of aggravated robbery. The jury found defendant not guilty of one count of aggravated criminal sexual assault.

In April 2007, defendant filed a posttrial motion,

which the trial court denied.  At the May 2007 sentencing hearing, the court vacated four of the aggravated-criminal-sexual-assault counts and sentenced defendant as stated.  In June 2007, defendant filed a motion to reduce sentence, which the court denied.  This appeal followed.

## II. ANALYSIS

### A. Constitutionality of Sentence

Defendant argues the trial court's imposition of a 10-year sentence enhancement for threatening the use of a dangerous weapon deprived him of his right to due process where (1) that sentence was disproportionate to the penalty for the offense of aggravated criminal sexual assault while threatening the life of the victim and (2) the enhancement was not reasonably related to the goal of deterring the use of dangerous weapons.  We disagree.

### 1. Standard of Review

"The constitutionality of a statute is purely a matter of law, and accordingly we review the circuit court's conclusion de novo.  [Citation.]  All statutes carry a strong presumption of constitutionality.  [Citation.]  To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution.  [Citation.]  We generally defer to the

- 6 -

legislature in the sentencing arena because the legislature is institutionally better equipped to gauge the seriousness of various offenses and to fashion sentences accordingly. [Citation.] The legislature's discretion in setting criminal penalties is broad, and courts generally decline to overrule legislative determinations in this area unless the challenged penalty is clearly in excess of the general constitutional limitations on this authority." People v. Sharpe, 216 Ill. 2d 481, 486-87, 839 N.E.2d 492, 497-98 (2005).

2. The Proportionate-Penalties Clause

Under the proportionate-penalties clause of the Illinois Constitution, "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, §11. To succeed on a proportionate-penalties claim, a "defendant must show that either the penalty imposed (1) is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community (the cruel or degrading test) or (2) differs from one imposed for an offense containing the same elements." People v. Brown, 375 Ill.

- 7 -

App. 3d 1116, 1118, 874 N.E.2d 607, 609 (2007).

In this case, defendant was convicted of four counts of aggravated criminal sexual assault under section 12-14(a)(1) of the Criminal Code of 1961, which requires proof of the following elements: (1) commission of criminal sexual assault and (2) the display, threatened use, or use of a dangerous weapon (other than a firearm). 720 ILCS 5/12-14(a)(1) (West 2004). A violation of section 12-14(a)(1) is a Class X felony for which 10 years shall be added to the prison term. 720 ILCS 5/12-14(d)(1) (West 2004).

Defendant argues the offense of aggravated criminal sexual assault under section 12-14(a)(1) violates the proportion-ate-penalties clause because it is identical to the offense set forth in section 12-14(a)(3) but with a harsher penalty. Section 12-14(a)(3) requires proof of the following elements: (1) commission of criminal sexual assault and (2) that "the accused acted in such a manner as to threaten or endanger the life of the victim or any other person" (720 ILCS 5/12-14(a)(3) (West 2004)). A violation of section 12-14(a)(3) is a Class X felony. 720 ILCS 5/12-14(d)(1) (West 2004).

Defendant contends an accused's threat to use a danger-ous weapon is the same as acting in such a manner as to threaten or endanger the victim's life. However, the elements are not identical. Only section 12-14(a)(1) requires the display, threatened use, or use of a dangerous weapon or weapon-like

object.  The use of a weapon is not necessary for the accused to act in such a manner as to threaten or endanger the victim's life under section 12-14(a)(3).  Moreover, section 12-14(a)(1) does not require that the display, threatened use, or use of the dangerous weapon actually threaten or endanger the life of the victim or another.  People v. Daniel, 311 Ill. App. 3d 276, 284, 723 N.E.2d 1279, 1287 (2000) (noting the language in section 12-14(a)(1) "simply means that an accused need only threaten to use a dangerous weapon during the commission of the offense, nothing more, nothing less").  Section 12-14(a)(1) requires the display or threat to use a dangerous weapon, while section 12-14(a)(3) requires acts which threaten the victim's life.

That the elements of the two offenses are not identical can be seen by looking at the Fifth District's decision in People v. Singleton, 217 Ill. App. 3d 675, 577 N.E.2d 838 (1991).  There, the State charged the defendant under section 12-14(a)(3), alleging he acted in a manner that threatened or endangered the victim's life.  Singleton, 217 Ill. App. 3d at 686-87, 577 N.E.2d at 845.  The evidence indicated the defendant entered the victim's bedroom and told her he would kill her if she did not have sex with him and pushed the victim onto the bed.  Singleton, 217 Ill. App. 3d at 686, 577 N.E.2d at 845.

The Fifth District held the facts were insufficient to sustain a conviction under section 12-14(a)(3) because that

section required an overt act that threatened or endangered the victim's life and not simply verbal threats. Singleton, 217 Ill. App. 3d at 687, 577 N.E.2d at 845. Considering the Fifth District's analysis, a threat to use a dangerous weapon under section 12-14(a)(1) would not satisfy the element of threat under section 12-14(a)(3). Thus, as the elements of the two offenses are not identical, section 12-14(a)(1) does not run afoul of the proportionate-penalties clause.

### 3. Due Process

Defendant also argues the 10-year enhancement under section 12-14(a)(1) when an offender does not actually possess a dangerous weapon is an unreasonable and arbitrary exercise of the State's police power in violation of the due-process guarantees of the United States and Illinois Constitutions.

The General Assembly has wide discretion in prescribing penalties for criminal offenses. See People v. McCleary, 353 Ill. App. 3d 916, 926, 819 N.E.2d 330, 339 (2004). "This exercise of the State's police power, however, is subject to the constitutional requirement that a person may not be deprived of liberty without due process of law." People v. Reed, 148 Ill. 2d 1, 11, 591 N.E.2d 455, 459 (1992).

When construing the constitutionality of a statute that does not affect a fundamental right, as in this case, the appropriate method of scrutiny is the rational-basis test. People v.

Johnson, 225 Ill. 2d 573, 584, 870 N.E.2d 415, 421-22 (2007). Under that test, a statute is constitutional if it bears a reasonable relationship to the public interest being protected and the manner of achieving that objective is also reasonable. People v. Linder, 127 Ill. 2d 174, 180, 535 N.E.2d 829, 831 (1989). In applying this test, courts must "[(1)] identify the public interest that the statute is intended to protect, [(2)] examine whether the statute bears a reasonable relationship to that interest, and [(3)] determine whether the method used to protect or further that interest is reasonable." Linder, 127 Ill. 2d at 180, 535 N.E.2d at 832.

Defendant contends the public interest the legislature intended to protect through the enhancement provision in section 12-14(a)(1) is the prevention of the use of non-firearm dangerous weapons when an offender commits the offense of criminal sexual assault. We find defendant's interpretation too narrow.

In considering the public interest the statute is intended to protect, "the legislature's intent is to be determined from the statute in its entirety, including the subject it addresses." Linder, 127 Ill. 2d at 182, 535 N.E.2d at 832. "[T]he purpose of the aggravated[-]criminal[-]sexual[-]assault statute is to protect victims of forcible sexual penetration where such conduct is accompanied by certain aggravating circumstances." People v. Sanchez, 344 Ill. App. 3d 74, 82, 800 N.E.2d

- 11 -

455, 462 (2003); see also People v. Printy, 232 Ill. App. 3d 735, 743, 598 N.E.2d 346, 352-53 (1992) (purpose of the Criminal Sexual Assault Act of 1984 "was to protect the victims and punish the perpetrators of sexually impermissible conduct"). The public interest served by the statute is "to protect victims and punish perpetrators by curtailing sexually harmful and offensive conduct." Sanchez, 344 Ill. App. 3d at 83, 800 N.E.2d at 462.

Section 12-14(a)(1) bears a reasonable relationship to the public interest of deterring and punishing violent sexual offenders. The law rationally serves that targeted interest by including those violent sexual offenders who seek to overcome the will of their victims by threatening the use of dangerous weapons other than firearms. Such threats can be highly effective in enabling offenders to accomplish sexual assaults and also discourage victims from defending themselves or signaling for help.

In passing the statute, the General Assembly could reasonably have determined that punishing threats to use dangerous weapons was equally as important as punishing the display or use of those weapons. Thus, section 12-14(a)(1) was reasonably related to the legitimate goals of protecting victims and deterring and punishing violent sexual offenders. Moreover, the enhanced penalty under section 12-14(a)(1) for criminal sexual assault committed when an offender threatens to use a dangerous weapon is a reasonable means of furthering the State's interest in deterring sexually harmful and offensive conduct.

## B. Sentence Credit

Defendant argues he is entitled to an additional seven days of credit for time served prior to sentencing. The State argues he is entitled to only six days. We agree with the State.

Section 5-8-7(b) of the Unified Code of Corrections (730 ILCS 5/5-8-7(b) (West 2004)) provides an offender shall be given credit on his sentence for time spent in custody. A "defendant is entitled to one day of credit for each day (or portion thereof) that he spends in custody prior to sentencing, including the day he was taken into custody." People v. Ligons, 325 Ill. App. 3d 753, 759, 759 N.E.2d 169, 174 (2001). "[A] defendant will not be credited for the day of sentencing in which he is remanded to the Department of Corrections." People v. Foreman, 361 Ill. App. 3d 136, 157, 836 N.E.2d 750, 768 (2005).

In the case sub judice, the trial court credited defendant with 1,015 days for time spent in custody. The record indicates defendant was taken into custody on August 12, 2004, and he remained in custody until May 30, 2007, the date of sentencing. The period of time between August 12, 2004, and May 29, 2007, amounts to 1,021 days. Therefore, defendant is enti-tled to six additional days of sentence credit for a total of 1,021 days.

## C. Costs of Appeal

In the conclusion of its brief, the State asked that costs of the appeal be assessed against defendant pursuant to

- 13 -

section 4-2002(a) of the Counties Code (55 ILCS 5/4-2002(a) (West 2006)).  Defendant argues the State is not entitled to costs where he has obtained partial relief as a result of his appeal.

"The successful defense of any part of a criminal judgment challenged on appeal entitles the State to a per diem fee and costs for its efforts."  People v. Smith, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985); see also People v. Nicholls, 71 Ill. 2d 166, 178-79, 374 N.E.2d 194, 199 (1978).  Because the State has successfully defended a portion of the criminal judgment, we find the State is entitled to its $50 statutory assessment.

### III. CONCLUSION

For the reasons stated, we affirm defendant's convictions and sentences as modified to reflect six additional days of sentence credit, and we remand for issuance of an amended judgment of sentence so reflecting.  As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed as modified; cause remanded with directions.

KNECHT, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

In regard to the identical-elements test, the aggravating element in section (a)(1) is that the accused "threatened to use *** a dangerous weapon," and the aggravating element in section (a)(3) is that the accused acted in such a manner as to "threaten or endanger the life of the victim."  720 ILCS 5/12-14(a)(1), (a)(3) (West 2004).  It is difficult to see any practical difference between these two aggravating elements, yet one comes with a mandatory 10-year sentencing enhancement and the other does not.

Compounding this inconsistency, the trial court was required to tack on the 10-year sentencing enhancement to each of the four aggravated-criminal-sexual-assault counts, which in turn were required to be served consecutively.  The practical result is that defendant received a 40-year sentencing enhancement because he threatened to use a knife.  The proportionate-penalties clause requires that "penalties be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."  Ill. Const. 1970, art. I, §11.  Threatening to use a knife did not so change the nature and character of this offense that defendant should receive an additional 40 years' imprisonment.